UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KELVIN JONES,

        Plaintiff,

v.                                     Case No. 8:20-cv-1684-MAP

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

_____/

## ORDER

Plaintiff appeals the administrative denial of his application for supplemental security income (SSI).[1]  *See* 42 U.S.C. § 1383(c)(3).  Plaintiff contends the Appeals Council (AC) improperly disregarded the treatment records he submitted to the agency after July 22, 2019, the date of the administrative law judge's (ALJ) decision.  After considering Plaintiff's argument, Defendant's response, and the administrative record (docs. 16, 21, 22), I find the Commissioner applied the proper standards.  The decision that Plaintiff is not disabled is supported by substantial evidence.  I affirm the Commissioner's decision.

*A.  Background*

Plaintiff Kelvin Jones was born on May 11, 1973, and was 44 years old when he applied for benefits. (R. 50, 59)  Plaintiff has a limited education – he dropped out of school in the ninth grade because of "family problems.  My mom was on drugs, daddy was on drugs, lost everything, so I was really like just out there homeless." (R. 59-60) Plaintiff's childhood was traumatic – he was shot in his left arm and side when he was a kid, and bullet fragments

---

[1] The parties have consented to my jurisdiction.  *See* 28 U.S.C. § 636(c).

remain in his left upper chest.  His left arm never recovered full strength. (R. 63-64)  He spent two and a half years in prison for a crime he committed at 16 years old.

On the hearing date, Plaintiff was living in an apartment with his girlfriend. (R. 62) He has past relevant work as a landscaper for his dad's groundskeeping business, where he worked his way up to supervisor. (R. 61) Plaintiff alleges disability beginning December 1, 2010, due to a back injury and chronic back pain. (R. 41)

After a hearing, the ALJ found that Plaintiff suffers from the severe impairments of "obesity; spine disorders; dysfunction – major joints and asthma."  (R. 43)  Aided by the testimony of a vocational expert (VE), the ALJ determined Plaintiff is not disabled, despite these impairments, as he retains the residual functional capacity (RFC) to perform light work:

> [T]he claimant is able to lift and/or carry twenty pounds occasionally and ten pounds frequently; sit for six hours in an eight-hour workday; stand and/or walk for six hours in an eight-hour workday; push and pull occasionally; climb ramps and stairs occasionally; never climb ladders, ropes or scaffolds; balance frequently; stoop, kneel, crouch and crawl occasionally; never work at unprotected heights; never work with moving mechanical parts; avoid vibration; never work in fumes, odors, dust, gases or poor ventilation; and avoid hazards in [the] workplace, such as heavy and moving machinery and heights [ ] and sharp objects.

(R. 45)  The ALJ found that, with this RFC, Plaintiff could work as an inspector and hand packager, cafeteria attendant, and electronics worker. (R. 51)

After the ALJ's July 22, 2019 decision denying his application, Plaintiff submitted records of care he received *before* the ALJ's decision:  August 24, 2018, through December 11, 2018 records from St. Joseph's Community Care (R. 20-27, 119-26), and records from February 1, 2019, through July 8, 2019, from Custom Healthcare (R. 87-114).  The AC found this evidence "does not show a reasonable probability that it would change the outcome of

the decision." (R. 2)  Plaintiff also submitted medical records of treatment he received *after* the ALJ's decision:  August 5, 2019, and February 26, 2020, records from Custom Healthcare. (R. 28-37)  Regarding this evidence, the AC found it "does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before July 22, 2019.  If you want us to consider whether you were disabled after July 22, 2019, you need to apply again." (*Id*.)

The AC denied review, rendering the ALJ's decision the agency's final one. (R. 1) Plaintiff, his administrative remedies exhausted, sued.

B.  *Standard of Review*

To be entitled to SSI, a claimant must be unable to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  *See* 42 U.S.C. § 1382c(a)(3)(A).  A "'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  *See* 42 U.S.C. § 1382c(a)(3)(D).

The Social Security Administration, to regularize the adjudicative process, promulgated detailed regulations currently in effect.  These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. § 416.920.  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary.  20 C.F.R. § 416.920(a)(4).  Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2)

whether the claimant has a severe impairment(s) (*i.e.*, one that significantly limits his ability to perform work-related functions); (3) whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Part 404, Subpart P; (4) considering the Commissioner's determination of claimant's RFC, whether the claimant can perform his past relevant work; and (5) if the claimant cannot perform the tasks required of his prior work, the ALJ must decide if the claimant can do other work in the national economy in view of his RFC, age, education, and work experience.  20 C.F.R. § 416.920(a)(4).  A claimant is entitled to benefits only if unable to perform other work.  *See Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); 20 C.F.R. § 416.920(f), (g).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings.  *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The ALJ's factual findings are conclusive if "substantial evidence consisting of relevant evidence as a reasonable person would accept as adequate to support a conclusion exists."  *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citation and quotations omitted).  The Court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision.  *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining the proper legal analysis has been conducted mandates reversal."  *Keeton*, 21 F.3d at 1066 (citations omitted).

4

*C.  Discussion*

*1.  Evidence submitted to AC*

Plaintiff submitted two categories of evidence to the AC that were not before the ALJ. The first category includes records of treatment Plaintiff received after his administrative hearing but before the ALJ's decision. (R. 20-27, 87-114, 119-26)  The AC found this evidence "does not show a reasonable probability that it would change the outcome of the decision." (R. 2)  Plaintiff does not appear to dispute this (*see* doc. 21 at 8-10); the AC's consideration of these records is not at issue in this appeal.  The second category of evidence – the focus of Plaintiff's argument – contains records of treatment Plaintiff received after the ALJ's July 22, 2019 decision. (R. 28-37)  Regarding these records, the AC found they do "not relate to the period at issue.  Therefore, it does not affect the decision about whether you were disabled beginning on or before July 22, 2019." (R. 2)

Plaintiff argues the AC is wrong – this second category of evidence is chronologically relevant because it contains treatment records from just two weeks after the ALJ's decision (doc. 21 at 8-10).  Plaintiff posits that a more logical position for the AC to take would have been to find the evidence was unlikely to change the administrative outcome.  And according to Plaintiff, "[t]he court should not be tempted to decide whether the Appeals Council would have determined that the new evidence would not have changed the Administrative Law Judge decision, had it determined that it was chronologically relevant." (*Id*. at 10).  The Commissioner counters the AC correctly determined the records were not chronologically relevant, and remand is not required because Plaintiff has not shown the ALJ's decision is erroneous (*see* doc. 22).  I agree with the Commissioner; this case does not require remand.

A claimant may present evidence at each stage of the administrative process.  *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007).  If a claimant presents evidence after the ALJ's decision, the AC must consider it if it is new, material, and chronologically relevant, *and* "there is a reasonable probability that the additional evidence would change the outcome of the decision."  20 C.F.R. § 416.1470(a)(5); *see also Washington v. Soc. Sec. Admin.*, 806 F.3d 1317, 1320 (11th Cir. 2015).  Evidence is new if it is not a part of the claims file as of the date of the ALJ's decision; evidence is material if it involves or is directly related to issues the ALJ adjudicated; and evidence is chronologically relevant if it "relates to the period on or before the date of the [ALJ's] hearing decision." 20 C.F.R. § 416.1470(a)(5); *see also* Hearings, Appeals, and Litigation Law Manual, I-3-3-6.B.2 (HALLEX).  The AC must grant the petition for review if the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence," including the new evidence.  *Ingram*, 496 F.3d at 1261 (quotation marks omitted); *see also Smith v. Soc. Sec. Admin.*, 272 F. App'x 789, 800-01 (11th Cir. 2008) (*per curiam*).  A claimant seeking remand under sentence four of 42 U.S.C. § 405(g) "must show, in light of the new evidence submitted to the Appeals Council, the ALJ's decision to deny benefits is not supported by substantial evidence in the record as a whole."  *Timmons v. Comm'r of Soc. Sec.*, 522 F. App'x 897, 902 (11th Cir. 2013).

Here, Plaintiff has not made that showing.  The AC, in denying Plaintiff's request for review, stated:

> You submitted evidence dated August 7, 2019 through February 26, 2020 received from Custom Healthcare (10 pages).  The Administrative Law Judge decided your case through July 22, 2019.  This additional evidence does not relate to the period at issue.  Therefore, it does not affect the decision about whether you were disabled beginning on or before July 22, 2019.

6

(R. 2)  Although Plaintiff seeks a different explanation, the AC must consider new evidence but is not required to explain its decision when denying review.  *See* 20 C.F.R. §§ 416.1467, 416.1470; *Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 903 (11th Cir. 2011) ("because a reviewing court must evaluate the claimant's evidence anew, the AC is not required to provide a thorough explanation when denying review").

Evidence may be chronologically relevant even if it post-dates the ALJ's decision.  For instance, in *Washington*, 806 F.3d at 1322, the Eleventh Circuit considered an examining psychologist's opinions to be chronologically relevant "even though [the psychologist] examined [the claimant approximately seven] months after the ALJ's decision."  The psychologist had reviewed the claimant's treatment records from the period before the ALJ's decision; the claimant had told the psychologist he had suffered from the conditions "throughout his life" (which obviously included the relevant period); and there was "no assertion or evidence" that the claimant's condition worsened "in the period following the ALJ's decision."  *Id.*; *see also Wordsman v. Berryhill*, 2019 WL 1349821, at *4-5 (M.D. Fla. Mar. 26, 2019) (remanding to the Commissioner for reconsideration of evidence submitted to the AC for the first time; evidence that post-dated relevant period by four months).

But in *Stone v. Commissioner of Social Security Administration*, 658 F. App'x 551, 555 (11th Cir. 2016), the Eleventh Circuit found the circumstances "significantly different" from those present in *Washington*.  The records in *Stone* "demonstrate[d] a worsening" of the relevant symptoms after the ALJ's decision.  *Id.*  And in *Hargress v. Commissioner of Social Security Administration*, 883 F.3d 1302, 1309-10 (11th Cir. 2018), the Eleventh Circuit found that progress notes post-dating the ALJ's decision did not "relate to the period before the

ALJ's . . . decision" and "nothing in these new medical records indicates the doctors considered [the claimant's] past medical records or that the information in them relates to the period at issue, which materially distinguishes this case from *Washington*." *Id*.; *see also Smith*, 272 F. App'x at 801-02 (affirming district court's decision; new evidence submitted to AC did "not establish a likelihood that the ALJ would have reached a different result," in part because they post-dated the ALJ's decision by between four and eight months). Evidence that a condition the ALJ previously considered has deteriorated may entitle a claimant to benefits under a new application, but it is not probative of whether a person is disabled during the specific period under review. *Wilson v. Apfel*, 179 F.3d 1276, 1279 (11th Cir. 1999); *see also Griffin v. Comm'r of Soc. Sec.*, 723 F. App'x 855, 858 (11th Cir. 2018) (finding MRI report prepared four months after ALJ's decision not chronologically relevant or material as there was no indication report related back to the relevant period).

I find this case more like *Stone* and *Hargress* and less like *Washington*. On August 5, 2019 (two weeks after the ALJ's decision), and February 26, 2020 (seven months after the ALJ's decision), Plaintiff had appointments with pain management doctor Chuka Enebeli-Uranta, M.D. to treat his chronic lower back pain. (R. 28-37) Plaintiff told Dr. Enebeli-Uranta his pain was 8 on a 10-point scale without medication but 5 out of 10 with it. Plaintiff said he "does not have optimal function due to chronic pain." (*Id*.) His "pain is relieved a little by lying down on side/stomach, reclining position, local heat, local ice, massage, TENS unit, stretching exercises, cream, patch, NSAIDs, muscle relaxer, Gabapentin." (*Id*.) Dr. Enebeli-Uranta's treatment plan consisted of continuing Plaintiff's prescriptions for dilaudid,

gabapentin, and Flexeril and advising him to lose weight. (R. 29)  Plaintiff had painful and limited range of motion in his lumbar spine.

At his February 26, 2020 appointment, Plaintiff had continued pain and reported that "the medication effect is still wearing off quickly." (R. 33)  Plaintiff told Dr. Enebeli-Uranta that "since he works at a restaurant and has to be on his feet for long periods of time, . . . the pain affects [ ] his job and [he] has a hard time completing his hours." (*Id.*)  The doctor noted Plaintiff "was offered surgery, injections and to have Orthopedic evaluation which [he] has refused at this time." (*Id.*)  Plaintiff's medication regimen included oxycodone, gabapentin, and Flexeril:  "Pt medication plan will be increased this month due to continuing pain and pt not being able to function or sleep daily.  Pt advised to continue the use of non-opioid alternatives for the pain." (R. 36)

There is no indication these records relate to the period before the ALJ's decision.  Dr. Enebeli-Uranta did not offer an opinion or base his treatment plan on Plaintiff's condition during the relevant period.  Instead, Plaintiff's appointments were routine follow-ups with medication adjustments.  Arguably, the February 26, 2020 medical record showed a worsening of Plaintiff's pain (although it also revealed Plaintiff could work a restaurant job, at least to some extent), but this would support a new application for benefits with an alleged onset date after the period.

Neither is there a reasonable probability these treatment notes would have changed the administrative outcome.  Plaintiff's argument the Court is foreclosed from considering this is unavailing.  *See* 20 C.F.R. § 416.1470(a)(5) (stating the AC will review a case if it receives additional evidence that is "new, material, and relates to the period on or before the

date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision."). Indeed, the AC found the other category of evidence Plaintiff submitted to it for the first time (records of treatment Plaintiff received after the administrative hearing but before the ALJ's decision) unlikely to change the administrative outcome. These records included more follow-up treatment notes from Dr. Enebeli-Uranta's pain management practice. Plaintiff does not challenge the AC's decision regarding these records.

At bottom, Plaintiff has not demonstrated the new evidence he submitted to the AC renders the ALJ's decision "not supported by substantial evidence in the record as a whole." *Timmons*, 522 F. App'x at 902. As the Eleventh Circuit has stated, "[w]hen a claimant properly presents new evidence to the AC and it denies review, we essentially consider the claimant's evidence anew to determine whether 'that new evidence renders the denial of benefits erroneous.'" *Burgin*, 420 F. App'x at 903 (quoting *Ingram*, 496 F.3d at 1262). Plaintiff quibbles with the explanation the AC articulated when denying review based on the additional records; he does not argue the ALJ's decision is unsupported by substantial evidence, and I find it is not.

*D. Conclusion*

It is ORDERED:

 (1) The Commissioner's decision is AFFIRMED; and

(2) The Clerk of Court is directed to enter judgment for Defendant and close

the case.

DONE and ORDERED in Tampa, Florida on October 20, 2021.

_____
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE